[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 30, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10830
Non-Argument Calendar
_____

BIA Nos. A95-230-235 & A95-230-236

WALTER RODRIGUEZ RIBEYRO,
ESMELDA BEATRIZ DEZA ULLOA,
RONALD BRYAN RODRIGUEZ DEZA,
JESUS ALBERTO RODRIGUEZ DEZA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

(August 30, 2005)

Before ANDERSON, WILSON, and PRYOR, Circuit Judges.

PER CURIAM:

Walter Rodriguez Ribeyro, his wife, Esmelda Beatriz Deza Ulloa, and their two minor children, Ronald Bryan Rodriguez Deza and Jesus Alberto Rodriguez Deza, citizens of Peru, petition the Court pro se for review of the final order of the Board of Immigration Appeals that affirmed the denial of Ribeyro's application for asylum and withholding of removal under the Immigration and Nationality Act. Ribeyro and his family argue that the adverse credibility finding of the IJ was not supported by substantial evidence and that Ribeyro established that he suffered past persecution and had a well-founded fear of future persecution. We disagree and deny the petition.

## I. STANDARD OF REVIEW

Because the BIA adopted the decision of the IJ without opinion, we review the analysis of the IJ as if it were the analysis of the BIA. Nreka v. United States Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005). We review factual determinations, including the existence of past persecution and a well-founded fear of persecution, under the substantial evidence test, and we "must affirm the . . . decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. 257 3d at 1283-84 (citation omitted). Under this highly deferential standard, we must defer to the decision . . . unless the evidence "compels" a reasonable factfinder to find otherwise. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992).

2

"Credibility determinations likewise are reviewed under the substantial evidence test." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). This Court may not substitute its judgment for that of the IJ with respect to credibility findings. Id. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Id. (internal quotations and citations omitted). An adverse credibility finding, however, does not alleviate the duty to consider other evidence produced by the applicant. Id.

## II. DISCUSSION

An alien who arrives in or is present in the United States may apply for asylum. INA § 208 (a)(1), 8 U.S.C. § 1158 (a)(1). The Attorney General has discretion to grant asylum if the alien meets the statutory definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). If the applicant meets this burden, then the AG may exercise his discretion to grant the applicant asylum. Id. To establish asylum eligibility, an alien must, with specific and credible evidence, establish either (1) past

3

persecution on account of his political opinion or other statutorily listed factor or (2) a "well-founded" fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. Because the IJ found that Ribeyro lacked credibility, "the burden is on [Ribeyro] to show that the IJ's credibility decision [1] was not supported by 'specific, cogent reasons' or [2] was not based on substantial evidence." Forgue, 401 F.3d at 1287.

Ribeyro argues that the BIA and IJ erred in denying his application for asylum or withholding of removal. Ribeyro contends that he established that he and his family were persecuted because of their political opinion and that Ribeyro's testimony regarding two physical confrontations with members of the terrorist group Shining Path established that the terrorists were motivated by his politics. He also argues that substantial evidence does not support the credibility findings of the IJ because the preparer of his asylum application was not fluent in English, and Ribeyro's testimony, with the aid of an interpreter, was detailed, coherent, and plausible.

Substantial evidence supports the finding of the IJ that Ribeyro did not suffer past persecution or have a well-founded fear that his political opinion will cause future persecution. It is undisputed that the IJ gave "specific, cogent

4

reasons" for his credibility determinations. In addition, the adverse credibility findings are supported by substantial evidence.

The IJ found numerous inconsistencies between Ribeyro's asylum application and his testimony at the immigration hearing. Although minor inconsistencies will not support an adverse credibility finding, inconsistencies that go "to the heart of [the] asylum claim" are sufficient to support an adverse credibility finding. Chebchoub v. I.N.S., 257 F.3d 1038, 1043 (9th Cir. 2001); see also Nreka, 408 F.3d at 1369. The most important inconsistency was the omission in his application of two physical confrontations with members of Shining Path. His asylum application focused on threatening phone calls placed by members of Shining Path and psychological pressures. On the other hand, Ribeyro testified that members of Shining Path physically assaulted him on two occasions, and that during the second altercation a gun was pointed at his head and he was given an ultimatum to leave the country or his family would be killed. This inconsistency was material and goes "to the heart of [the] asylum claim." Chebchoub, 257 F.3d at 1043.

Ribeyro argues that the inconsistencies between his asylum application and his testimony was because of his unfamiliarity with the English language. He contends that he filed the application pro se, it was poorly prepared, and he is not fluent in English. This argument fails.

5

At the hearing, Ribeyro had an interpreter who was able to tell his full story. Although it is clear that the application was prepared by someone who was not fluent in English, the application is based solely on threatening phone calls and mental anguish. The application does not mention any kind of physical assaults or altercations. Substantial evidence supports the adverse credibility findings of the IJ, but that credibility finding does not end our analysis.

Because Ribeyro presented corroborating evidence of persecution, the IJ cannot base the denial of the application solely on the adverse credibility determination:

> [A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant. That is, the IJ must still consider all evidence introduced by the applicant. If the applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application. If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances.

Forgue, 401 F.3d at 1287. We must determine whether the IJ properly considered and rejected the corroborating evidence presented by Ribeyro.

The IJ considered the testimony of Rafael Robles as evidence of past persecution, but rejected it because Robles's application for asylum was significantly different from Ribeyro's application. Robles's application was based on his former membership in the military and his political activities within the

6

Aprista Party. His application was detailed and stated that Shining Path placed a bomb in his house. Roble's application led to a grant of asylum. On the other hand, Ribeyro's application was based on threatening telephone calls and contained only general information. Moreover, his application omitted critical information regarding two alleged physical assaults with Shining Path. We conclude that substantial evidence supports the finding of the IJ that Ribeyro did not suffer past persecution or have a well-founded fear that his political opinion will cause future persecution.

Ribeyro also failed to establish that he was entitled to withholding of removal under the INA, which allows for withholding of removal if an alien can show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. See INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). An alien seeking withholding of removal must establish that he would "more likely than not" be persecuted on account of one of the protected grounds" if he were to return to the country. See INS v. Stevic, 467 U.S. 407, 429-30, 104 S. Ct. 2489, 2501 (1984). This standard is more stringent than the standard for asylum. See Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1324 n.2 (11th Cir. 2001).

If "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding

of removal." <u>Al Najjar</u>, 257 F.3d at 1292-93 (internal citations omitted).  Because Ribeyro failed to meet the lower standard of eligibility for asylum, substantial evidence supports the denial by the BIA of withholding of removal.  We conclude that Ribeyro failed to meet his burden to show that it was more likely than not that his life or freedom would be threatened on account of any protected ground.

### III.  CONCLUSION

Based on the foregoing, we deny Ribeyro's petition for review.

**PETITION DENIED**